01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
07                                   AT SEATTLE

08    BILL J. SWANN,                          )
                                              )    CASE NO. C11-5166-TSZ
09                         Plaintiff,         )
                                              )
10        v.                                  )    REPORT AND RECOMMENDATION
                                              )
11    MICHAEL J. ASTRUE, Commissioner of      )
      Social Security,                        )
12                                            )
                           Defendant.         )
13    _____ )

14          Plaintiff Bill J. Swann appeals the final decision of the Commissioner of the Social

15    Security Administration ("Commissioner") which denied his applications for Disability

16    Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17    of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18    administrative law judge ("ALJ").   For the reasons set forth below, the Court recommends that

19    the Commissioner's decision be REVERSED and REMANDED for further proceedings.

20                          I.  FACTS AND PROCEDURAL HISTORY

21          Plaintiff was born in 1964 and was 38 years old on his alleged disability onset date.

22    (Administrative Record ("AR") 15, 123.)   He completed high school and earned an Associate

of Arts degree in retail business marketing management.  (AR 24, 153.)   He also testified that he obtained a United States Coast Guard certificate in 1989, 1998, and 2004.  (AR 24-25.)  His past work experience includes employment as a construction laborer, bicycle mechanic, and painter.  (AR 15, 149.)   He was last gainfully employed on June 26, 2003.  (AR 148.)  Plaintiff asserts that he is disabled due to the residual effects status post electrocution, and a mental impairment.  (AR 12, 148; Dkt. 10 at 9.)   He asserts an onset date of June 26, 2003.  (AR 123, 129.)

The Commissioner denied plaintiff's claim initially and on reconsideration.  (AR 56-59, 63-72.)  Plaintiff requested a hearing, which took place on September 23, 2009.  (AR 18-51.)  On October 6, 2009, the ALJ issued a decision finding plaintiff not disabled.  (AR 10-17.)  Plaintiff's administrative appeal of the ALJ's second decision was denied by the Appeals Council (AR 1-3), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On March 3, 2011, plaintiff timely filed the present action challenging the Commissioner's decision.  (Dkt. 1.)

## II.  JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.  DISCUSSION

As the claimant, Mr. Swann bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).   The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

01 expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

02 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments

03 are of such severity that he is unable to do his previous work, and cannot, considering his age,

04 education, and work experience, engage in any other substantial gainful activity existing in the

05 national economy. 42 U.S.C. §§ 423(d)(2)(A).

06      The Commissioner follows a five-step sequential evaluation process for determining

07 whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be

08 determined whether a claimant has engaged in substantial gainful activity. 20 C.F.R.

09 §§ 404.1520(b), 416.920(b). The ALJ found plaintiff had not engaged in substantial gainful

10 activity since June 26, 2003, the alleged onset date. (AR 12.) At step two, it must be

11 determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff had

12 the following severe impairment: the residual effects status post electrocution. *Id*. The ALJ

13 determined that plaintiff did not have a severe mental impairment. *Id*. Step three asks

14 whether a claimant's impairment or combination of impairments meets or medically equals one

15 of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. The ALJ found that plaintiff

16 did not have an impairment or combination of impairments that met or medically equaled a

17 listed impairment. (AR 13.) If the claimant's impairments do not meet or equal a listing, the

18 Commissioner must assess residual functional capacity ("RFC") and determine at step four

19 whether the claimant has demonstrated an inability to perform past relevant work. The ALJ

20 found that plaintiff had the RFC to perform less than the full range of light work. *Id*. He could

21 not climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, stoop and

22 crouch. *Id*. He could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently,

01 but had limited ability for reaching. *Id*. He could stand and/or walk with normal breaks for a

02 total of at least two hours in an eight-hour workday. *Id*. At step four, the ALJ determined that

03 plaintiff was unable to perform his past relevant work. (AR 15.) If the claimant is able to

04 perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts

05 to the Commissioner at step five to show that the claimant can perform other work that exists in

06 significant numbers in the national economy, taking into consideration the claimant's RFC,

07 age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180

08 F.3d at 1099-1100. The ALJ found there are jobs that exist in significant numbers in the

09 national economy that plaintiff could perform, such as small parts assembler and parking lot

10 attendant. (AR 16.) The ALJ thus concluded that plaintiff was not under a disability from

11 June 26, 2003, through the date of the decision. (AR 17.)

12 Plaintiff argues that the ALJ erred in his credibility determination, finding he did not

13 have a severe mental impairment, and relying on the vocational expert. (Dkt. 10 at 2.) He

14 also contends that the ALJ's decision is not supported by substantial evidence. *Id*. He

15 requests remand for an award of benefits, or, alternatively, for further administrative

16 proceedings. *Id*. at 15. The Commissioner argues that the ALJ's decision is supported by

17 substantial evidence and should be affirmed. (Dkt. 11 at 18.) For the reasons described

18 below, the Court agrees with the plaintiff.

19 A. <u>Credibility</u>

20 Plaintiff argues that the ALJ erred in finding his testimony not credible. (Dkt. 11 at

21 5-9.) According to the Commissioner's regulations, a determination of whether to accept a

22 claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529,

416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

In this case, there was no evidence that the plaintiff was malingering. Consequently, the ALJ was required to provide clear and convincing reasons to reject his testimony. As stated by the ALJ, plaintiff testified that "he had worked painting trains. A power cable provided 480 volts to each train car. The [plaintiff] said that he tripped over the train track and was electrocuted. He has had complaints of low back pain, left shoulder pain, and pain in the

01  neck and head, for which he has seen a chiropractor."  (AR 12-13, 329-31, 518.)  Plaintiff

02  testified at the hearing that he remains unable to work "[b]ecause I get lots of pain in my whole

03  left side, lower back, upper shoulder.   My joints are, I feel like my joints are kind of shocked."

04  (AR 33.)   Plaintiff alleged that he has too much pain to push a lawn mower or do housework,

05  uses a cane to walk, has severely disturbed sleep due to pain, and mood issues.  (AR 14, 34,

06  519.)   The ALJ found that plaintiff's medically determinable impairment could reasonably be

07  expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity,

08  persistence, and limiting effects of these symptoms were not credible.   *Id.*

09       The ALJ offered several reasons for questioning plaintiff's credibility.  (AR 14-15.)

10  First, the ALJ found that plaintiff's activities were inconsistent with his claimed severe

11  functional limitations.  (AR 14.)   The ALJ noted that plaintiff worked for five weeks at a

12  fishing camp in Alaska during the summers of 2006, 2007, 2008, and 2009, during which he

13  supervised preparations and prepared meals for employees.  (AR 12, 14, 25-28.)   Although

14  the ALJ determined this work was an unsuccessful work attempt, the ALJ also found the work

15  undermined plaintiff's claims of disabling physical limitations.  (AR 12, 14.)   In addition, the

16  ALJ noted that plaintiff attended business and computer classes at Centralia Community

17  College three to four hours a day, three to four days a week for a year in 2005.  (AR 14, 35-37,

18  533.)   While attending classes, plaintiff drove 25 miles each way to school, used the school

19  library computers, and sought counseling from advisors.  *Id.*

20       Plaintiff argues that the ALJ improperly relied on limited work activities and some

21  attempts to retrain for a new job to discredit his testimony.   (Dkt. 10 at 7.)   Plaintiff argues that

22  although he testified that he worked at a summer fish camp for five week periods, he also

testified that he was unable to perform continuously during those five weeks and was forced to stop and rest every few days due to pain symptoms. (AR 28.) Citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007), plaintiff contends that his unsuccessful attempt to work is not a clear and convincing reason to reject his testimony.

In *Lingenfelter*, the Ninth Circuit held that an unsuccessful work attempt is not a clear and convincing reason to reject a claimant's subjective pain and symptom testimony because "[i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Id*. at 1038. Rather, the Court found that "evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain." *Id*. The Court agrees that the ALJ improperly concluded that plaintiff's ability to work at a five week fishing camp each summer since 2006 was inconsistent with the alleged severity of his symptoms. Plaintiff's unsuccessful work attempts should not be a factor in the credibility determination. *See id*. at 1038.

Although the foregoing reason was improperly considered by the ALJ in making the credibility determination, the ALJ appropriately considered plaintiff's ability to commute to community college business and computer classes three to four days a week every semester for a year, and use the school library computers. (AR 14, 36-38.) An ALJ is permitted to draw an adverse inference as to the plaintiff's credibility when the plaintiff is able to engage in activities inconsistent with alleged symptoms and limitations. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that evidence of activities involving skills that could be transferred to the workplace supported the ALJ's adverse credibility determination); *see also Matthews v.*

*Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (finding that plaintiff's ability to attend school three days a week was "an activity which is inconsistent with an alleged inability to perform all work."). The ALJ properly considered plaintiff's ability to attend school three to four days a week for a year without missing many classes as one factor in the credibility determination.

In addition, the ALJ gave two other reasons which justify his negative credibility finding. Next, the ALJ determined that plaintiff's alleged symptoms were contrary to the medical opinion of the state medical consultants, the results of a Performance Based Physical Capacities Evaluation, an Independent Medical Examination ("IME"), and the opinion of the consultative examiner. (AR 14-15.) As the ALJ pointed out, a May 2004 Performance Based Physical Capacities Evaluation revealed that plaintiff was able to lift and carry up to forty pounds occasionally and thirty-five pounds frequently. (AR 14, 241-43.) It was also determined that he could stand for four hours in an eight-hour workday, and walk for three and one-half hours in an eight-hour workday. *Id*. The ALJ also noted that physical medicine and rehabilitation specialist Margo Newell-Eggert, M.D., encouraged plaintiff to return to work, and reported that there were no objective findings preventing him from participating in vocational retraining. (AR 14-15, 414-16.) In addition, an August 2005 IME by an orthopedic surgeon and a neurosurgeon concluded that plaintiff had reached maximum medical improvement, that plaintiff had sustained no permanent partial impairment, and that further treatment was unnecessary. (AR 15, 328-40.) Finally, the ALJ noted that in December 2006, consultative examiner Michael Grace, M.D., opined that plaintiff could lift up to twenty-five pounds occasionally, and up to twenty pounds frequently. He could stand and walk two hours in an eight-hour workday, and had no restriction in sitting. (AR 15, 518-22.)

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ properly found these examination findings were inconsistent with plaintiff's allegations of disabling physical limitations and were accounted for in determining that plaintiff is capable of performing a limited range of light work.

The ALJ also found that despite plaintiff's alleged inability to perform all work due to severe pain, plaintiff had not been treated since March 31, 2006, three and a half years before the hearing before the ALJ. (AR 15.) The ALJ also found plaintiff's testimony was undermined by the fact that he had had only conservative treatment for his symptoms, and had only taken over-the-counter medications such as Aleve. (AR 15, 38.) As plaintiff testified, "I turned down all the pain medications that were prescribed to me completely down, because I don't want to be on the Vicodin, or those other wacky prescription drugs out there. I just choose not to I asked to be . . . all natural, if I can. . . . So the only thing that I ever took, like I said, was Aleve. I even turned down antidepressants. I don't, I didn't want any of that stuff." (AR 38.)

The undersigned finds no error here. An ALJ appropriately considers unexplained or inadequately explained failure to seek treatment in making a credibility determination. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged in light of the fact that he did not seek aggressive treatment) (citing *Parra v. Astrue,* 481 F.3d 742, 750-51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel,* 172 F.3d at 1114 (rejecting subjective pain complaints where

petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received")).

Plaintiff argues this adverse credibility finding was improper because the ALJ "made no attempt to understand why [he] had not been treated since 2006." (Dkt. 10 at 8.) He asserts that the ALJ should have developed the record before insinuating that his lack of treatment was due to improvement or lack of symptoms. *Id*.

The ALJ has a "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Brown v. Heckler*, 713 F.2d 441,443 (9th Cir. 1983)). However, this duty is triggered only when the record is ambiguous or inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). In this case, the record was not inadequate. Nor did plaintiff's own symptom testimony create ambiguity in the record regarding the severity of his pain symptoms. Rather, the ALJ properly discredited the plaintiff's testimony, in part, because he had not received medical treatment since 2006, and only took over-the-counter medication for his allegedly disabling pain. *See* SSR 96–7p (noting that an ALJ may discount a claimant's credibility "if the level or frequency of treatment is inconsistent with the level of complaints."). The ALJ found plaintiff's pain symptoms incredible and instead relied on adequate medical evidence to assess plaintiff's physical RFC and, ultimately, find him not disabled. Therefore, the ALJ's duty to develop the record was not triggered in this case.

The foregoing reasons offered by the ALJ to justify his adverse credibility determination are sufficiently clear and convincing and supported by substantial evidence in the

01  record. The ALJ permissibly discounted plaintiff's testimony regarding his physical

02  limitations based on plaintiff's ability to attend school, inconsistencies with the medical

03  opinion evidence, and his limited medical treatment.

04    B.  <u>Severity of Mental Impairments</u>

05    At step two, a claimant must make a threshold showing that his medically determinable

06  impairments significantly limit his ability to perform basic work activities. *See Bowen v.*

07  *Yuckert*, 482 U.S. 137, 145, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§

08  404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes

09  necessary to do most jobs," including walking, standing, sitting, lifting, pushing, pulling,

10  reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and

11  remembering simple instructions, using judgment, and dealing with changes in a routine work

12  setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of

13  impairments can be found 'not severe' only if the evidence establishes a slight abnormality that

14  has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at

15  1290 (quoting SSR 85-28). "[T]he step two inquiry is a de minimis screening device to

16  dispose of groundless claims." *Id*. An ALJ is also required to consider the "combined effect"

17  of an individual's impairments in considering severity. *Id*.

18    In evaluating the severity of mental impairments, a "special technique" must be

19  performed at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a).

20  In *Gutierrez v. Apfel*, 199 F.3d 1048 (9th Cir. 2002), the Ninth Circuit held that an ALJ's failure

21  to follow the special technique requires reversal when the claimant has a "colorable claim of a

22  mental impairment." *Id*. at 1051 (construing an earlier version of the section under which the

ALJ was required to fill out and attach a Psychiatric Review Technique form ("PRTF")). Amendments to the regulation postdating *Gutierrez* have given ALJs greater discretion in deciding how best to publish the mandated findings, but even under the amended version, the regulation requires the ALJ to follow the special technique and to "document application of the technique in the[ir] decision." 20 C.F.R. § 416.920a(e); *see Keyser v. Comm'r, Soc. Sec. Admin.*, __ F.3d __, 2011 WL 2138237, *3 (9th Cir. 2011) ("Although the regulation no longer requires attachment of the PRTF, the *Gutierrez* analysis remains unchanged: the Social Security Regulations require the ALJ to complete a PRTF and append it to the decision, or to incorporate its mode of analysis into the ALJ's findings and conclusions."). Specifically, the regulation requires the ALJ's decision to "include a specific finding as to the degree of mental limitation in each of the functional areas described" in 20 C.F.R. § 416.920a(c). 20 C.F.R. § 416.920a(e). These areas include activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c).

Plaintiff assigns error to the ALJ's determination that his mental impairments were nonsevere. (Dkt. 10 at 9-13.) Plaintiff asserts that his "mental impairments were first diagnosed in 2003 and continued at least until [his] last mental health evaluation in 2006, prior to the hearing." *Id*. At 12. He further contends that even if his mental health impairments were nonsevere, they should have been considered at subsequent steps in the sequential evaluation process. *Id*.

In December 2003, Laura Dahmer-White, Ph.D., conducted a neuropsychological evaluation of the plaintiff on referral from plaintiff's treating physician Dr. Newell-Eggert. (AR 197-207.) Dr. Dahmer-White diagnosed plaintiff with Adjustment Disorder with

01 Depressed Mood, Pain Disorder Associated with both Psychological Factors and a General

02 Medical Condition, and Rule Out Cognitive Disorder. (AR 204.) She opined that

03 "[p]sychological factors [were] likely exacerbating [plaintiff's] pain and functional disability."

04 *Id*. At 204. She assigned plaintiff a global assessment of functioning ("GAF") score of 65,

05 indicating "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty

06 in social, occupational, or school functioning (e.g., occasional truancy, or theft within the

07 household), but generally functioning pretty well, has some meaningful interpersonal

08 relationships."[1] American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental

09 Disorders 34 (Text. Rev., 4th ed. 2000).

10      In December 2006, Carla Van Dam, Ph.D., conducted a psychological evaluation of

11 plaintiff for the Washington State Disability Determination Services ("DDS"). (AR 531-36.)

12 Dr. Van Dam noted that "[a] number of tests were administered to better understand

13 [plaintiff's] current situation," but that results on the Test of Memory Malingering ("TOMM")

14 were not indicative of best effort. (AR 534.) Dr. Van Dam noted that memory testing using

15 the Wechsler Memory Scale ("WMS III") was also done, "but due to discrepancies, and the

16 TOMM, the validity of obtained scores cannot be ascertained." *Id*. at 534. She diagnosed

17 plaintiff with Adjustment Disorder, Rule Out Cognitive Disorder, and Rule Out Pain Disorder,

18 but was unable to ascertain a current GAF score. *Id*. at 536.

19      On December 21, 2006, medical consultant James Bailey, Ph.D., completed a Mental

20

21     1 The GAF is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n,

22 Diagnostic and Statistical Manual of Mental Disorders 34 (Text. Rev., 4th ed. 2000).

01   Residual Functional Capacity Assessment ("MRFC") and a PRTF of the plaintiff. (AR

02   539-54.) Dr. Bailey diagnosed plaintiff with Adjustment Disorder, Rule Out Cognitive

03   Disorder, and Rule Out Pain Disorder. (AR 546-49.) He opined in the PRTF that plaintiff

04   had moderate difficulties in maintaining concentration, persistence, or pace. (AR 553.) He

05   also opined in his MRFC finding that plaintiff was "capable of performing simple tasks with

06   adequate persistence and pace," and could "attend work regularly, work within a routine, work

07   near others, and complete a workday/week." (AR 541.)

08        In considering plaintiff's mental impairments at step two, the ALJ found as follows:

09        The claimant does not have a severe mental impairment. Although the state
agency found that the claimant's mental impairments allowed him to do simple
10        routine tasks [AR 541], his activities after the state analysis have shown his mental
ability to do basic work activities. The claimant testified that he has actively
11        participated in fishing camps in Alaska during the summers of 2007, 2008, and
2009. He testified that he supervised and prepared breakfast for the employees.
12        He testified that [sic] helped them prepare to take people out fishing.
Additionally, the claimant testified that he attended Centralia Community College,
13        taking courses in business and computers. The claimant said that he attended
classes for three or four days a week for a year. He drove about 25 miles each way
14        to attend classes. He went to the school library to use the computers. The
claimant testified that he was in class three or four hours a day. In light of these
15        activities, the claimant was not significantly emotionally impaired from doing basic
work activities.

16

17   (AR 13.) The Court agrees that the ALJ failed to properly assess plaintiff's mental

18   impairments at step two.

19        The record shows plaintiff was diagnosed with Adjustment Disorder with Depressed

20   Mood, Pain Disorder Associated with both Psychological Factors and a General Medical

21   Condition, and Rule Out Cognitive Disorder. Yet the ALJ failed to identify and evaluate these

22   impairments and their symptoms alone or in combination at step two. In addition, as plaintiff

01  points out, Dr. Bailey determined that plaintiff had moderate limitations in his ability to

02  maintain concentration, persistence, or pace, and was moderately limited in his ability to

03  understand, remember, and carry out detailed instructions; moderately limited in his ability to

04  maintain attention and concentration for extended periods; and moderately limited in his ability

05  to respond appropriately to changes in the work setting. (AR 539.) He opined that plaintiff

06  was limited to simple tasks with adequate persistence and pace. (AR 541.) He found plaintiff

07  could adapt sufficiently for routine work in a routine setting. *Id*.

08      The ALJ rejected Dr. Bailey's opinion, noting that plaintiff's "activities after the state

09  analysis have shown his mental ability to do basic work activities." (AR 13.) Specifically,

10  the ALJ found that plaintiff's work at the Alaskan fish camp and his ability to attend

11  community college business and computer courses showed that he was "not significantly

12  emotionally impaired from doing basic work activities." *Id*. However, as indicated above,

13  plaintiff's unsuccessful work attempt at the Alaskan fishing camp actually demonstrated that

14  his impairments or symptoms affected his ability to perform work activities. In addition,

15  although the ALJ noted that plaintiff's community college attendance occurred *after* Dr.

16  Bailey's analysis, Dr. Bailey reported that plaintiff attended community college and noted that

17  plaintiff reported doing "very well." (AR 541.) Nevertheless, Dr. Bailey maintained that

18  plaintiff had moderate limitations in his ability to perform basic work activities. (AR 539-41.)

19  Accordingly, the ALJ's reasons for rejecting Dr. Bailey's opinion are not supported by

20  substantial evidence.

21      Moreover, even if the evidence does not establish the diagnosed impairments cause

22  more than a "slight abnormality," the ALJ erred by failing to consider their effects in

01  combination with severe impairments throughout the sequential evaluation.  *See* 20 C.F.R. §§

02  416.923, 416.929, 404.1545(a); *see also Smolen*, 80 F.3d at 1290 (noting that if one severe

03  impairment exists, all medically determinable impairments must be considered at the remaining

04  steps).   Accordingly, the ALJ's step two finding is not supported by substantial evidence.

05        The Commissioner argues that plaintiff failed to meet his burden of proving that he had

06  a mental impairment that persisted continuously at a medically severe level for the twelve

07  month durational requirement.   (Dkt. 11 at 12.)   However, the Court reviews the ALJ's

08  decision "based on the reasoning and factual findings offered by the ALJ—not post hoc

09  rationalizations that attempt to intuit what the adjudicator may have been thinking."   *Bray v.*

10  *Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing, *inter alia*, *Snell v. Apfel*, 177 F.3d

11  128, 134 (2d Cir. 1999) ("The requirement of reason-giving exists, in part, to let claimants

12  understand the disposition of their cases…")).

13        On remand, the ALJ is directed to reevaluate the medical evidence to determine whether

14  plaintiff had a severe mental impairment, and whether a mental impairment would contribute

15  additional functional limitations.   The ALJ is directed to develop the record further if

16  necessary, including obtaining further evaluation of plaintiff or expert medical testimony.

17        Because the Court finds that the ALJ erred in his consideration of plaintiff's mental

18  impairments, the Court does not address plaintiff's contention that the ALJ failed to provide a

19  complete hypothetical to the vocational expert.   *See Gallant v. Heckler*, 753 F.2d 1450, 1456

20  (9th Cir. 1984) ("If the assumptions in the hypothetical are not supported by the record, the

21  opinion of the vocational expert . . . has no evidentiary value.").   Plaintiff's RFC should be

22  considered again following reconsideration of plaintiff's mental impairments.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED for further administrative proceedings not inconsistent with this opinion.  A proposed order accompanies this Report and Recommendation.

DATED this <u>21st</u> day of November, 2011.

_____
Mary Alice Theiler
United States Magistrate Judge